UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    -v-                                                                          CASE NO. 10-CR-110 (TJM)

JAMES GALPIN,

                         Defendant.

# MEMORANDUM OF LAW IN SUPPORT OF JAMES GALPIN'S MOTION TO SUPPRESS

| | | |
|---|---|---|
| DATED: | December 16, 2010<br>Syracuse, New York | Respectfully submitted,<br><br>LISA PEEBLES<br>Interim Federal Public Defender |
| | By: | James F. Greenwald, Esq.<br>Assistant Federal Public Defender<br>Bar Roll No.: 505652<br>Clinton Exchange, 3rd Floor<br>4 Clinton Square<br>Syracuse, New York 13202<br>(315) 701-0080 |

**PRELIMINARY STATEMENT**

This Memorandum of Law is submitted pursuant to Rule 12(b)(3)(C) in support of James Galpin's motion to suppress evidence directly seized pursuant to a search warrant as well as any and all evidence derived therefrom as fruit of the poisonous tree. *See Wong Sun v. United States*, 371 U.S. 471 (1963). A defendant is entitled to an evidentiary hearing upon a substantial preliminary showing that a challenged warrant affidavit contains intentional or recklessly false information that was integral to the probable cause finding. *See Franks v. Delaware*, 438 U.S.154 (1978). Therefore, Galpin moves this Court to suppress evidence or, if not, to hold a *Franks* hearing.

**FACTUAL AND PROCEDURAL BACKGROUND**[1]

On July 6, 2009, Senior Investigator Patrick K. Hogan of the Tioga County Sheriff's Department applied for a warrant to search the residence, person, and vehicle of James Galpin. Hogan made his application after conducting an investigation of Galpin beginning in June, 2009. As presented in his warrant application, Hogan began his investigation after learning that Galpin had been in a grocery store in Owego, New York, with a 13-year-old male. After learning of the male's identity, Hogan observed a posting Galpin placed on the male's MySpace page. Galpin's posting was done using the handle "Medic Guy."

The mother also informed Hogan that Galpin had contacted the child on his cellphone. The

---

[1] All factual information presented in this section is drawn from the July 6, 2009, search warrant and accompanying supporting documents, which are attached as Exhibit 1 and filed under seal, and the amended application, attached as Exhibit 3 and filed under seal. It appears that Investigator Hogan's affidavit was included as part of the warrant application.
   Furthermore, because Galpin's motion to suppress evidence and his request for a *Franks* hearing are based purely on legal arguments and do not rely on a disputed factual issue, counsel is not including a separate affidavit. In so far as an affidavit is required under Local Rule 7.1(a)(2) to set forth the factual and procedural background upon which the motion rests, counsel requests that this section of the memorandum and the accompanying exhibits be treated as such.

boy informed his mother that Galpin had invited him on a fishing trip in Owego. The mother also informed investigators that Galpin, apparently telling the child he was a massage therapist, had massage equipment in his basement along with a computer he used for his massage business. Though claiming not to have received a massage, the male stated Galpin provided a massage to his friend, the identity of whom was not revealed in the application. Investigators' request for Galpin's cellphone records revealed contacts he made with the minor on five separate occasions ranging from June 7, 2009, to June 11, 2009.

As noted above, an examination of the child's MySpace account revealed an image of Galpin with the user name Medic Guy. The internet provider informed investigators that the subscriber I.P. address associated with the Medic Guy posting belonged to Galpin. Upon learning this, investigators searched Galpin's November 11, 2008, sex offender registration. Although listing three user names and three email accounts, Galpin failed to register the Medic Guy identifier. This failure, according to Hogan, violated N.Y. CORRECTIONS LAW § 168-f.

Investigators then began to monitor Galpin's activities. As stated in the application, Hogan "observed adolescent males with Galpin in his residence and juvenile males are observed being brought to the residence by Galpin in his 2005 Jeep Liberty . . . . where juvenile male was observed not leaving the residence for the rest of the evening." Hogan further claimed to have observed "on numerous occasions Juvenile males at residence playing with fireworks and staying at the residence for the duration of the night."

Based on this information, Hogan concluded in his affidavit that Galpin "is engaged in the use of the internet via MySpace and chat to lure juvenile males to the residence for the purpose of engaging in sexual conduct, . . . using cell phone to make contact with and direct the pickup of

juveniles by direct talk and text messaging and is facilitated with the use of the 2005 Black Jeep Liberty . . . to transport juvenile males to his residence." Citing his training and experience, Hogan further concluded "that persons involved in child sexual exploitation use the internet, cell phones and practices of becoming juvenile friendly to groom juveniles for the purpose of engaging in sexual behavior with children." Hogan made the following additional claim:

> [I]t is reasonable to expect that upon execution of this warrant evidence will be obtained that James Galpin Jr. is using his computer or other device capable of accessing the World Wide Web to include but not limited to computer's [sic], cell phones, game systems or ipod's [sic] capable of communicating with other persons, to post, chat, text, sending pictures or video's [sic], or talk live and evidence of such will be located at the residence or on the person, or vehicle of James Galpin Jr.

Again citing his training and experience, Hogan concluded that "persons who engage in the sexual predator behaviors do not provide current e-mail address's [sic], user names or passwords on their sexual offender registration to avoid detection of illegal activities by Law Enforcement and to divert Law Enforcement to a plausible or legitimate e-mail which do not contain any of the subjects [sic] illicit activities."

The warrant application sought the issuance of a warrant to search Galpin's residence, person, and vehicle for cameras, computers, cell phones, and any and all computing or data processing software, "which may reveal evidence which substantiates violations of Penal Law statutes, Corrections Law statutes and or Federal statutes." In the Background section of the application, Hogan provided the following information, which is cited without alteration:

> Your deponent is a member of the Tioga County Sheriff's Department and has been so employed in the capacity of Criminal Investigator for the past 19 years and that your deponent has been involved in the investigation into Sexual abuse, sexual predators using the internet and cell phones to lure individuals to his or her location for the purpose of engaging in sexual activity. Your deponent is familiar with the many practices used by Sexual Predators who in the course of their illicit activities

will: utilize the world wide web to contact and lure juvenile victims utilizing sites such as Facebook and Myspace, further they will transmitt via the internet images of themselves in sexually explicit photo's or request images of juveniles being sent to them, further they utilize false names and addresses to conceal their activities from Law Enforcement, keep and maintain records of previous victims and or associates in secreted locations within their computers to save downloaded images or text of their juvenile victims.  Further your deponent is aware that sexual predators will contact persons via the wold wide web with similar sexual preferences to educate themselves to the practices used by Law Enforcement to detect their illicit activities. Further your deponent is aware that sexual predators will utilize vehicles to contact and transport juveniles to locations to engage in sexual activities, specifically to their residences where they can secrete their activities from Law Enforcement.

Upon being presented with this application, Town of Owego Justice Robert W. Henning issued a warrant to search Galpin's residence, vehicle, and person, for property "that will constitute, substantiate or support violations of NYS Corrections Law, section 168-f subdivision four, NYS Penal Law and or Federal Statutes . . .." The property was further described as various computer and computer-related equipment.  The warrant authorized law enforcement to seize and later search the various computer equipment for five types of information:

    (1)    Any access numbers, passwords, personal identification numbers (PINS), logs, notes, memoranda and correspondence relating to computer, electronic and voice mail systems, internet address's [sic] and/or related contacts.

    (2)    Any computing or data processing literature, including, but not limited to printed copy, instruction books, notes, papers, or listed computer programs, in whole or in part.

    (3)    Any audio or video cassette tape recordings, books magazines, periodicals, or other recorded or printed material, the possession of which constitutes a violation of the aforementioned statutes of the Laws of New York state or Federal Statutes.

    (4)    Any and all photographs depicting sexual conduct by a child and/or minors engaged in sexually explicit conduct.

    (5)    Any records or correspondence relating to the possession, transmission, collection, trading or production of the aforementioned photographs.

Hogan executed the warrant on July 8, 2009. The attached inventory lists 32 seized items. *See* inventory attached as Exhibit 2 and filed under seal. Of particular relevance, investigators seized and searched an Acer computer, a Nikon Coolpix digital camera, and a Cruzer thumb drive, which, it is alleged, contained images of child pornography.[2]

On March 10, 2010, a grand jury handed up a nine-count indictment, charging four counts of production of child pornography, in violation of 18 U.S.C. § 2251(a), one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), and four counts of committing a felony offense involving a minor, viz. the four alleged production counts, while being required to register as a sex offender, in violation of 18 U.S.C. § 2260A.

---

[2] After executing the warrant on July 8, 2009, Investigator Hogan apparently amended the warrant application on July 8, 2009, at 10:02 a.m. The amendment contains the following summary:

> On Wednesday the 8th day of July 2009 your deponent executed a Search Warrant at [Galpin's residence] for the propert outlined in the aforementioned portion of this Application. Upon execution of the Search Warrant your deponent observed in the basement area of the rsidence in a room which contained a table covered in cloth, a stethoscope hung on the wall and lotions typically used for the purpose of massage. Further, during the course of this investigation your deponent directed the interview of a child known to frequent the Galpin residence . . . . Investigator Hallett conducted an interview of Juvenile males mother [HEP] who states that her son told her that he received a massage from Galpin and that Galpin requested and received a massage from the juvenile male, further that Galpin paid the juvenile male $2.00 for giving Galpin a massage, a copy of the statement is attached to this Application.

*See* amended warrant attached as Exhibit 3 and filed under seal.

As this amendment was included after the execution of the original warrant, it has no bearing on the issues presented in the instant motions.

# ARGUMENT

I. **THE WARRANT FAILED TO ESTABLISH PROBABLE CAUSE TO SEARCH GALPIN'S COMPUTER FOR EVIDENCE OF CHILD PORNOGRAPHY.**

The Fourth Amendment guarantees that "no warrants shall issue, but upon probable cause, supported by Oath." U.S. CONST. amend. IV.  As explained by the Supreme Court, "probable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1993).  Accordingly, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id*.  Though flexible, probable cause requires more than generalized suspicion.  *See United States v. Ceballos*, 654 F.2d 177, 185 (2d Cir. 1981).  The government carries the burden of proof in establishing probable cause.  *See United States v. Delossantos*, 536 F.3d 153, 158 (2d Cir. 2008).

Law enforcement had probable cause to believe Galpin failed to register his internet identifier.  Investigator Hogan learned that a person with the internet identifier Medic Guy was a contact (friend) of a 13-year-old boy.  Police traced the identity of the I.P. address to Galpin.  A search of Galpin's recent sex offender registration revealed that he had failed to list the identifier as required by N.Y. CORRECTIONS LAW § 168-f.  Although this information by itself would likely be sufficient to sustain a conviction for a registration violation, law enforcement could search Galpin's computer for evidence to further confirm their suspicions of such a violation.  Their probable cause, however, was limited to evidence connected to the registration violation, *i.e.*, evidence that Galpin had established the identifier and had knowingly failed to register it as required by New York State

law.

Beyond evidence of the registration offense, however, probable cause was woefully lacking. In addition to evidence concerning Galpin's use of an unregistered internet identifier to contact a 13-year-old boy, law enforcement learned that he had accompanied the same boy to a grocery store, asked the boy to accompany him on a fishing trip, had the boy over to his residence, where the boy learned Galpin, who claimed to be a massage therapist, had a massage table and a computer for his claimed massage business, and had apparently given a massage to another "juvenile male." While law enforcement monitored Galpin's activities, "juvenile males [were] observed being brought to the residence by Galpin . . . where juvenile male was observed not leaving the residence for the rest of the evening." Investigator Hogan also saw Galpin with "adolescent males." Law enforcement also knew, and the issuing magistrate judge was obviously aware, that Galpin was a registered sex offender. Neither the warrant nor any of the supporting documents referenced the offense for which Galpin was required to register. Had they done so, the issuing magistrate would have learned that Galpin's qualifying offense resulted from his 1991 New York State conviction for sexual abuse in the first degree.

These facts fail to establish probable cause to believe evidence of any crime other than the registration offense would be found in the listed places to search. Read as a whole, it is obvious Investigator Hogan believed Galpin was a sexual predator bent on luring minor children to his residence where he would sexually abuse them. *See* attached affidavit ("Based on my training and experience and facts set forth above, I respectfully submit that James Galpin Jr. is engaged in the use of the internet via MySpace and chat to lure juvenile males to the residence for the purpose of engaging in sexual conduct . . .."). The facts presented in the affidavit, however, fail to support that

8

conclusion. That Galpin was seen accompanying a 13-year-old child, whom he had contacted using an unregistered email address and a cellphone to invite on a fishing trip, and whom he had over to his residence does not, by itself, indicate criminal wrongdoing. The 13-year-old in question never indicated Galpin had ever done anything untoward. There is not a whiff of suspicion that Galpin had ever touched the child in an inappropriate manner or even communicated anything of a sexual nature to the child. Although Galpin identified another "juvenile male friend of his who did get a massage from Galpin," the child never indicated that the age of the juvenile or that the massage was inappropriate or illegal. Furthermore, investigators learned of the other juvenile's identity, but apparently failed to speak to him prior to seeking a warrant. The same is true of the "adolescent males" and "juvenile males" Hogan observed frequenting Galpin's residence. The magistrate was never informed of the ages of the referenced males, and Hogan never apparently spoke with them to learn why they were at Galpin's residence. And if he ever did, the information was not included in the warrant application. There is not a single mention of any sexual act between Galpin and a minor or any indication that Galpin had discussions of a sexual nature with a minor either online or in person. Instead, Investigator Hogan's claim that Galpin was using the computer and cellphone to lure children into sexual conduct at his residence rests solely on bald speculation.

Even if the evidence was sufficient to support a finding of probable cause to believe Galpin was luring or attempting to lure minor children to his residence to engage them in sexual conduct, that finding does not further support probable cause to search Galpin's computers for evidence of child pornography. The only express reference to sexually explicit images of children is found on the face of the warrant, which permits law enforcement to search Galpin's computers for "[a]ny and all photographs depicting sexual conduct by a child and/or minors engaged in sexually explicit

9

conduct."[3]  This grant of authority is presumably based on Hogan's insertion of the following statement: "Your deponent is familiar with the many practices used by Sexual Predators who in the course of their illicit activities will . . . transmitt [sic] via the internet images of themselves in sexually explicit photo's [sic] or request images of juveniles being sent to them . . . keep and maintain records of previous victims and or associates in secreted locations within their computers to save downloaded images or text of their juvenile victims."  Even this generalized statement based on Hogan's experience fails to expressly claim probable cause to believe "photographs depicting sexual conduct by a child and/or minors engaged in sexually explicit conduct" will be found on Galpin's various computer equipment.  All the warrant application does is purport to establish two generalities: (1) a connection between sexual predators and images of children and (2) sexual predators and downloaded images of their juvenile victims.  Neither statement expressly mentions explicit images of children engaged in sexually explicit conduct.  Properly read, then, the warrant application fails to even mention sexually explicit images.

Even if the warrant application can be stretched to include images of child pornography, to do so would require reliance on the unsupported generalizations of Investigator Hogan.  As explained above, the facts set forth in the application fail to mention sexual conduct or child pornography.  The only statement that could conceivably be read to refer to child pornography is found in Hogan's background.  Because the particularized facts available to Hogan wholly fail to support a claim of probable cause to search Galpin's computer for child pornography, he was

---

[3] The warrant also contains a clause permitting law enforcement to search the computer for "any audio or video cassette tape recordings, books magazines, periodicals, or other recorded or printed material, the possession of which constitutes a violation of the aforementioned statutes of the Laws of New York state or Federal statutes."  As will be explained below, this, along with the entire warrant, fails the particularity requirement of the Fourth Amendment.

required to create a nexus between the available facts and his desire to search for child pornography. Hogan attempted to do this by creating general inferences from particular facts. Hogan's efforts, however, defy logic.

Hogan's reasoning proceeds as follows. Galpin used an unregistered internet identifier to contact a minor. Based on Hogan's claimed training and experience, "persons who engage in the sexual predator behaviors" do not provide current internet identifiers so as to "avoid detection of illegal activities by Law Enforcement and to divert Law Enforcement to a plausible or legitimate e-mail which do not contain any of the subjects illicit activities." Because Galpin used an unregistered internet identifier to contact a minor, he is, according to Hogan, a person who engages in "sexual predator behaviors." And because, according to this logic, Galpin engages in "sexual predator behaviors," he is a sexual predator. Hogan's experiences also teaches that sexual predators possess and create child pornography. Therefore, Hogan's reasoning concludes, because Galpin has been deemed a sexual predator, it is reasonable to conclude that he possesses child pornography.

Logic and common sense would dictate, however, that just because a person required to register as a sex offender made contact with a child using an unregistered internet identifier does not make it reasonable to conclude the same person likely collected child pornography on his computer. Indeed, such a conclusion relies on flawed inferential reasoning. As recently explained by the Second Circuit, "'[i]t is an inferential fallacy of ancient standing to conclude that, because members of group A' (those who collect child pornography) 'are likely to be members of group B' (those attracted to children), 'then group B is entirely or even largely composed of members of Group A.'" *United States v. Falso*, 544 F.3d 110, 122 (2d Cir. 2008) (quoting *United States v. Martin*, 426 F.3d 68, 82 (2d Cir. 2005) (Pooler, J., dissenting)). Hogan relies on improper inferences of this sort when

11

attempting to connect (1) Galpin's use of an unregistered internet identifier to his being a sexual predator attracted to children and (2) Galpin's apparent attraction to children to his collection of child pornography.  And, as the same court observed, while it might be true that "computers are utilized by individuals who exploit children (which includes collectors of child pornography) to . . . locate, view, download, collect and organize images of child pornography found through the internet," there is nothing in that statement indicating "that it is more (or less) likely that [Galpin's] computer might contain images of child pornography."  *Id*.  This is because Hogan's "sweeping representation that computers are used by those who exploit children to, *inter alia*, view and download child pornography, would be equally true if 1% or 100% of those who exploit children used computers to do those things." *Id*.  Therefore, this Court should find that the warrant failed to establish probable cause to search for child pornography on Galpin's computers.

> II. **EVEN IF THE WARRANT APPLICATION IS FACIALLY SUFFICIENT TO ESTABLISH PROBABLE CAUSE TO SEARCH GALPIN'S COMPUTER, THIS COURT SHOULD HOLD A *FRANK'S* HEARING BECAUSE THE APPLICATION EMPLOYS SEVERAL MATERIAL MISSTATEMENTS.**

A defendant is entitled to challenge the veracity of search warrants in limited circumstances. The claim that the affidavit contains deliberately or recklessly false information is one such circumstance.  *See Franks v. Delaware*, 438 U.S. 154 (1978).  To suppress evidence obtained pursuant to an affidavit containing erroneous information, the defendant must show that: "(1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause finding." *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir.1998).

Investigator Hogan's application contains several intentional and recklessly false statements

designed specifically to establish probable cause when the facts known to him otherwise failed to do so. As noted above, the facts known to Hogan and presented in the application included the following: (1) Galpin was a sex offender as a result of an unstated offense; (2) he was required to register his internet identifiers; (3) he contacted a 13-year-old male using an unregistered internet identifier; (4) he brought the male to a grocery store and to his residence either alone or with other people; (5) he contacted the male by cellphone; (6) he invited the male on a fishing trip either alone or with others; (7) he gave another male of unstated age a massage at his residence; (8) "adolescent males" and "juvenile males" of unstated age where seen entering and exiting Galpin's residence. Conspicuously absent from these circumstances is any mention of child pornography. To connect this set of circumstances to child pornography, Hogan relied on intentionally or recklessly false statements. He claimed that his experience taught him that people who contact minors using secret internet identifiers are child predators and child predators collect child pornography. Because experience is incapable of establishing the likelihood of these two propositions, this Court should hold a *Franks* hearing to test how Hogan's specific experience lead him to these conclusions.

False statements also include material omissions that render an application misleading. *See United States v. Ferguson*, 758 F.2d 843, 848 (2d Cir. 1985). Here, Hogan either intentionally or recklessly omitted the fact of Galpin's qualifying sex conviction. Had he included the fact that Galpin was convicted of sexual abuse in the first degree, and had never been convicted of a computer-related offense, his generalized claims about sexual predators would have been seriously undermined.[4] Therefore, because Hogan either intentionally or recklessly included false statements

---

[4] As noted above, Investigator Hogan also failed to include the age of the male whom the 13-year-old boy stated received a massage from Galpin. He also failed to include the ages of the referenced males seen at Galpin's residence and whether he questioned or attempted to question

and omitted information that rendered the affidavit misleading, this Court should either suppress evidence seized directly or derivatively from the warrant or hold a *Franks* hearing.

>  **III. BECAUSE THE WARRANT PURPORTS TO AUTHORIZE A GENERAL SEARCH OF GALPIN'S COMPUTER, THIS COURT SHOULD SUPPRESS ANY AND ALL EVIDENCE SEIZED AND DERIVED FROM ITS SEARCH.**

In relevant part, the Fourth Amendment guarantees that "no Warrants shall issue . . . without particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. As the Second Circuit observed in *United States v. Young*, 745 F.2d 733, 758-69 (2d Cir. 1984), the particularity requirement traditionally serves three related purposes: (1) "preventing general searches"; (2) "preventing the seizure of objects upon the mistaken assumption that they fall within the magistrate's authorization" and (3) "preventing the issuance of warrants without a substantial factual basis." In short, requiring particularity "makes general searches . . . impossible . . . [and leaves] nothing . . . to the discretion of the officer executing the warrant." *Marron v. United States*, 275 U.S. 192, 196 (1927). *See also Maryland v. Garrison*, 480 U.S. 79, 84 (1987) ("By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit."). Just as importantly, the particularity requirement also "assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *Groh v. Ramirez*, 540 U.S. 551, 561-62 (2004) (quoting *United States v. Chadwick*, 433 U.S. 1, 9 (1977)).

---

any of the males and, if so, what information they provided.

The particularity requirement has taken on greater importance in the digital era, when the personal computer now has the ability "to store and intermingle a huge array of one's personal papers in a single place." *United States v. Otero*, 563 F.3d 1127, 1132 (10th Cir. 2009). As one commentator has observed, computers "are postal services, playgrounds, jukeboxes, dating services, movie theaters, daily planners, shopping malls, personal secretaries, virtual diaries, and more." Orin Kerr, *Searches and Seizures in a Digital World*, 119 Harv. L. Rev. 531, 569 (2005). Consequently, reviewing courts have required warrants authorizing the search of computers to identify the particular crime or type of criminal activity under investigation. *See*, *e.g.*, *United States v. Rosa*, __F.3d__, 2010 WL 4227428 at *8 (2d Cir. Oct. 27, 2010) ("Here, the warrant directed officers to seize and search certain electronic devices, but provided them with no guidance as to the type of evidence sought.") (citing *United States v. George,* 975 F.2d 72, 76 (2d Cir.1992)).

In this case, the warrant purported to authorize law enforcement officers to seize Galpin's computers and computer-related equipment and search it for evidence "that will constitute, substantiate or support violations of NYS Corrections Law, section 168-f subdivision four, NYS Penal Law and or Federal Statutes . . .." Section Two authorized officers to search "[a]ny and all computing or data processing software, or date including but not limited to hard disks, floppy disks, magnetic tapes, Intregal RAM or ROM units, and any other permanent or portable storage device(s) which may reveal evidence and substantiates violations of the aforementioned NYS and Federal statutes." Subsection (c) of Section 3 permitted investigators to search for "[a]ny audio or video cassette tape recordings, books magazines, periodicals, or other recorded or printed material, the possession of which constitutes a violation of the aforementioned statutes of the Laws of New York states or Federal Statutes." Leaving aside reference to N.Y. Corrections Law § 168-f mentioned only

15

in the first paragraph listing the type of property, these three grants of authority are limited only by the reference to any New York State penal law or any Federal law. A limitation to search for evidence of any crime is no limitation at all. *See George*, 975 F.2d at 76 ("Mere reference to 'evidence' of ... general criminal activity provides no readily ascertainable guidelines for the executing officers as to what items to seize. ... [A]uthorization to search for 'evidence of *a* crime,' that is to say, any crime, is so broad as to constitute a general warrant."). Because the searching offices in this case were given unfettered access to search Galpin's computer and other digital devices for any type of evidence, this Court should suppress the evidence seized from Galpin's computer and computer-related equipment.

Even the warrant's apparent reference to child pornography fails the particularity requirement. The warrant grants the searching officers the authority to search for "[a]ny and all photographs depicting sexual conduct by a child and/or minors engaged in sexually explicit conduct." Here again, however, there is no reference to a specific statutory provision. And because the warrant does not define the terms "sexually explicit conduct" or "sexual conduct by a child," the officers were left to their own devices. The Supreme Court has held that warrants for materials with First Amendment implications must be described with the "most scrupulous exactitude." *Stanford v. Texas*, 379 U.S. 475, 485-86 (1965). A warrant that leaves the determination as to whether images depict "sexual conduct by a child" or "sexually explicit conduct" in the unguided discretion of the executing officer hardly constitutes the most scrupulous exactitude. Therefore, this Court should suppress the evidence seized pursuant to the general warrant as well as any and all evidence derived therefrom as fruit of the poisonous tree. *See Wong Sun v. United States*, 371 U.S. 471 (1963).

## CONCLUSION

Based on the foregoing analysis, this Court should suppress any and all evidence seized directly and derivatively from the general warrant lacking probable cause or hold a *Franks* hearing to address the false and misleading statements contained in the supporting documents.

DATED:      December 17, 2010                    LISA PEEBLES
                                                 Interim Federal Public Defender

                                        By:    */s/*
                                                James F. Greenwald
                                                Assistant Federal Public Defender
                                                Bar Roll No. 505652
                                                Office of the Federal Public Defender
                                                4 Clinton Square, 3rd Floor
                                                Syracuse, New York 13202
                                                (315) 701-0080

cc:     Miroslav Lovric, AUSA
        James Galpin